# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ARMANDO MEZO-REYES,

    Petitioner,

    v.                                                                           Case No. 17-CV-452

ROBERT HUMPHREYS,

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS

    Armando Mezo-Reyes, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket # 1.) Mezo-Reyes was convicted of second-degree sexual assault, battery, and one count of having sex with a child over the age of sixteen. He was sentenced to fifteen years of initial confinement to be followed by ten years of extended supervision. Mezo-Reyes alleges that his conviction and sentence were unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

    Mezo-Reyes' conviction stems from allegations that he "forced his way into the home of his ex-girlfriend, pushed her to the floor, and forcibly had sexual intercourse with her." (*State v. Mezo-Reyes*, 2015AP1746, 2015AP1747 (Wis. Ct. App. June 22, 2016), Docket # 9-5 at 2.) After his arrest, Mezo-Reyes was interviewed by Walworth police and gave an incriminating statement. Before trial, Mezo-Reyes moved to suppress his statement. He argued that police gave him the *Miranda* warning in English, although his first language was

Spanish, and he did not speak or comprehend English proficiently enough to freely, voluntarily, and intelligently waive his rights. (*Id.* at 2–3.) The trial court denied the motion finding that Mezo-Reyes had knowingly and intelligently waived his rights.

Mezo-Reyes appealed to the Wisconsin Court of Appeals, which rejected his argument and affirmed the conviction. (Docket # 9-6.) Mezo-Reyes then petitioned the Wisconsin Supreme Court, which denied review. (Docket # 9-7.) Subsequently, Mezo-Reyes timely filed a petition for a writ of habeas corpus in this court.

## STANDARD OF REVIEW

Mezo-Reyes' petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the

governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Mezo-Reyes argues that he is entitled to habeas relief because the court of appeals' decision that he freely, voluntarily, and intelligently waived his *Miranda* rights was based on

an unreasonable determination of the facts. Thus, Mezo-Reyes grounds his claim for relief in § 2254(d)(2). To be entitled to habeas relief under § 2254(d)(2), Mezo-Reyes must show that the court of appeals' decision was based on an unreasonable determination of the facts in the light of the evidence presented in state court. I may not characterize these state-court factual determinations as unreasonable "merely because [I] would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Review of state court factual findings is deferential. *Id.* ("[Section] 2254(d)(2) requires that we accord the state trial court substantial deference."). If "reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination" *Id.* (internal quotation and citation omitted). Determination of a factual issue made by the state court is presumed to be correct and the petitioner carries the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To protect an individual's right against self-incrimination under the Fifth Amendment, the Supreme Court held in *Miranda v. Arizona* that suspects must be advised of certain rights before they are subjected to custodial interrogation. 384 U.S. 436, 444 (1966). A suspect may waive his *Miranda* rights only if that waiver was made voluntarily, knowingly, and intelligently. Determining whether a waiver of *Miranda* rights is proper has two distinct dimensions. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the relinquishment of the right must have been voluntary in the sense that it was the product of

a free and deliberate choice rather than intimidation, coercion, or deception. *Id*. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id*. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Id*.

Here, at the motion to suppress, the trial judge had: (1) the recording of Mezo-Reyes' police interview; (2) the testimony of three police officers who had contact with Mezo-Reyes on the day he was arrested; and (3) Mezo-Reyes's testimony, through an interpreter. (Docket # 9-5 at 3–4.) The police officers testified that they communicated with Mezo-Reyes in English, he answered in English, they had no trouble understanding him, he appeared to have no difficulty understanding them, he responded appropriately to their statements and commands, and he did not appear to need an interpreter. (*Id.*) Mezo-Reyes testified that he understood none of the rights that were read to him because he did not speak or read English well and understood "less than half" of what the interviewing officer said to him. (*Id.* at 4.) He also testified that he had been in the United States for four or five years, attended high school in Wisconsin for about two years, earned an A/B in his English instruction class, and had worked at various local restaurants. (*Id.*) The trial judge found that the officers' testimonies were more credible. (*Id.*) Specifically, the trial judge found that Mezo-Reyes had a motive to minimize his understanding of English, that his answers were "self-serving," and that he was "selective" as to what he did or did not understand. (*Id.*)

Based on this record, the court of appeals found that the trial court's findings and rejection of the motion were not clearly erroneous. (*Id.*) The court of appeals found that the trial court was not obliged to make an explicit finding as to the level of Mezo-Reyes' ability to speak and comprehend English. (*Id.*) Further, the court of appeals found that based on its own review of the record and the recorded interview, it independently found that Mezo-Reyes freely, voluntarily, and intelligently waived his *Miranda* rights. (*Id.*)

Mezo-Reyes argues that he is entitled to habeas relief because "the state court judge did not make any historical findings concerning Mezo-Reyes' ability to understand English, and, consequently, it is logically impossible for the court to find that Mezo-Reyes understood the Miranda warning, which was given to him in English." (Petitioner's Br. at 8, Docket # 12.) He argues that "[u]nder the unique circumstances of this case, it is insufficient to invoke the 'presumption of correctness' for factual findings simply because the state court judge uttered the conclusion that Mezo-Reyes understood the Miranda warning." (*Id.*)

As stated above, whether an individual freely, voluntarily, and intelligently waives his *Miranda* rights is determined on a totality of the circumstances. Of course, implicit in that analysis is a determination that the person understood the *Miranda* rights in the language that that they were communicated to him. Here, although the trial judge did not make an explicit finding of fact as to Mezo-Reyes' English proficiency level (i.e., whether Mezo-Reyes' English proficiency was at the elementary, high school, or college level), he did cite to evidence showing that Mezo-Reyes understood English and was able to communicate in English. Specifically, the trial judge explained his decision as follows:

6

> In deciding this motion the Court has reviewed the testimony of all of the parties -- all of the witnesses, starting with Chief Severt who spoke to the defendant in English. He had contact with the defendant. He was given commands and he followed those commands and indicated that the defendant answered appropriately to these questions. Officer Hooper then testified that when she arrived the defendant answered the door, she spoke to him in English. She asked him to step outside and he answered appropriately and talked to her about his side of the story. And we've got the testimony of Officer Kjendlie. Officer Kjendlie only spoke to the defendant in English. There was conversation that was give and take back and forth and the defendant was responsive to those questions. When Mr. Mezo-Reyes apparently was unable to understand things, he asked for clarification.

(Answer, Ex. 9, Transcript of Apr. 3, 2014 Motion Hearing, Docket # 9-9 at 45–46.) The trial judge then noted that Mezo-Reyes had been in the United States for four to five years, attended high school for two years, and had worked. (*Id.* at 46.) Thus, although the trial judge did not make an explicit finding of fact as to Mezo-Reyes' English proficiency level, this is not a case where the trial judge failed to consider and address Mezo-Reyes' ability to understand English in analyzing his ability to knowingly and intelligently waive his *Miranda* rights.

Unquestionably, the video recording of the interrogation shows that Mezo-Reyes does not speak English fluently. However, review of the video recording of Mezo-Reyes' interrogation shows that it was not unreasonable for the trial judge to conclude that Mezo-Reyes knowingly and intelligently waived his *Miranda* rights. (Compact Disk of Interrogation, Docket # 19.) The video shows that Officer Kjendlie read Mezo-Reyes his *Miranda* rights and asked Mezo-Reyes if he understood them. Mezo-Reyes indicated that he did not understand part of it. Officer Kjendlie explained the part that Mezo-Reyes said he

7

did not understand and then asked Mezo-Reyes if he now understood. Mezo-Reyes responded that he did. Mezo-Reyes also indicated that he was willing to talk to Officer Kjendlie. The video shows that the entirety of the exchange was in English. The video also shows that Mezo-Reyes' conversation with Officer Kjendlie was not limited to yes and no answers. Mezo-Reyes could, albeit in imperfect English, narrate his side of the story in response to questions posed to him.

Mezo-Reyes argues that several facts show that he did not understand English. (Petitioner's Br. at 11.) First, he told Officer Kjendlie that his English was "so-so." (*Id.*) While the video does show that exchange, "so-so" does not negate the trial judge's reasons for finding that Mezo-Reyes knowingly waived his *Miranda* rights. In other words, an individual's "so-so" English may be sufficient to understand and communicate in English and waive *Miranda* rights depending on the totality of the circumstances. Here, the trial judge cited to Mezo-Reyes' ability to follow commands in English, requests for clarifications in English, and engagement in a back-and-forth conversation in English.

Next, Mezo-Reyes argues that he "asked the officer to speak to him in Spanish." (*Id.*) This is not exactly correct. The video shows that Mezo-Reyes specifically asked Kjendlie: "Do you speak Spanish?" Perhaps Mezo-Reyes asked this question because he wanted Kjendlie to speak to him in Spanish. But even if Mezo-Reyes would have been more comfortable speaking in Spanish, this does not mean that he could not understand or communicate in English sufficiently to waive his *Miranda* rights.

Additionally, Mezo-Reyes argues that he told the officer that he did not understand his rights. (*Id.*) This is an overstatement of the record. As discussed above, Mezo-Reyes did tell the officer that he did not understand part of *Miranda*. In response, Kjendlie explained the part that Mezo-Reyes indicated he did not understand and then checked with him to see if he then understood. Mezo-Reyes indicated that he did.

Finally, Mezo-Reyes relies on his testimony that he only understood half of what the officer was saying. (*Id.*) As Mezo-Rezo acknowledges, the trial judge, who had the opportunity to see Mezo-Reyes testify live, rejected his testimony as "self-serving" and "not credible." (Docket # 9-9 at 47.)

None of the facts that Mezo-Reyes points to, considered alone or in combination, shows that the court of appeals' decision was based on an unreasonable determination of the facts. Again, AEDPA does not permit federal courts to "supersede the trial court's . . . determination" if a review of the record shows only that "[r]easonable minds . . . might disagree about the finding in question." *Brumfield*, 135 S. Ct. at 2277 (internal quotations and citations omitted). For these reasons, Mezo-Reyes is not entitled to habeas relief.

**CERTIFICATE OF APPEALABILITY**

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate

that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4).

Reasonable jurists could not debate that Mezo-Reyes fails to show a denial of a constitutional right. Thus, I will deny him a certificate of appealability. Of course, Mezo-Reyes retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of February, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge